**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Sam LEVY, Defendant–Appellant.**

**No. 91–3030.**

United States Court of Appeals,
Seventh Circuit.

Argued April 8, 1992.

Decided April 9, 1993.

Lisa Huestis, Lance C. Malina, Barry R. Elden, Asst. U.S. Attys., Office of the U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Michael G. Logan, Chicago, IL (argued), for defendant-appellant.

Before CUMMINGS and CUDAHY, Circuit Judges, and DILLIN, District Judge.[*]

CUDAHY, Circuit Judge.

Sam Levy was convicted on a conditional guilty plea of felonious possession of a firearm. Based on his prior felony convictions his sentence was enhanced under 18 U.S.C. § 924(e) and he was sentenced to fifteen years imprisonment. Levy challenges the conviction on the ground that the police arrested him without probable cause and that therefore the district court erred in denying his motion to suppress the firearm and the other evidence found in a search of his person incident to that arrest. We reverse.

### I.

On November 3, 1988, Joe Hunter Kincade of G & J Sales, a telemarketing firm located in Chicago, Illinois, telephoned Michael Pielli, the owner of Hanson's Billiards in Evergreen Park, a suburb of Chicago. Kincade asked Pielli for a donation for the Illinois Police Federation and Pielli, having contributed to the Federation in the past, agreed to donate twenty-five dollars for the Federation's Underprivileged Children's Christmas Party. Kincade told Pielli that he would send a runner over the next day to pick up the donation. Pielli then proceeded to call the Evergreen Park police and informed them of Kincade's call.

Enter defendant Sam Levy, Joe Kincade's messenger. At 1 p.m. on November 4, 1988, Levy arrived at Hanson's Billiards. While Levy waited, Pielli called the police to tell them that Kincade's messenger had indeed arrived to collect the donation. Two officers were dispatched and arrived shortly at Hanson's Billiards. They approached Levy who was waiting in the display area of the store and asked him if he had a permit to solicit in Evergreen Park. He answered that he did not, and the police arrested him for solicitation without a permit.

After the police arrested Levy, they searched him and recovered from his person a loaded .32 caliber handgun and a four-inch hunting knife. The Evergreen Park police charged Levy with operating a business in Evergreen Park without having first obtained a license in addition to various Illinois firearms violations. The local authorities ultimately dropped their charges after the United States expressed an intention to bring firearms charges.

On June 8, 1989, Sam Levy was indicted for possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). Levy filed a motion to suppress all evidence derived from the

[*] The Honorable S. Hugh Dillin of the United States District Court for the Southern District of Indiana, sitting by designation.

search incident to his arrest on the ground that the arrest had been made in violation of the Fourth Amendment. The district court initially granted the motion based on its finding that the arrest had been made without probable cause because section 26–35 of the Evergreen Park Village ordinances prohibits solicitation without a permit only "upon the street, sidewalk, or public ways of the Village," Evergreen Park, Ill., Code § 26–35, and Levy had been in a privately owned business establishment at the time of his arrest. The district court later reversed its ruling on the motion of the government, which argued that the police had probable cause to arrest Levy based not on section 26–35 but on section 26–20, which prohibits solicitation in "any private residence, apartment or premises in the Village" without a permit. Evergreen Park, Ill., Code § 26–20. Levy contends that the district court erred in reversing its initial decision to grant the motion because the police knew Levy was not soliciting; he was merely picking up an agreed-upon donation that had already been solicited.

## II.

■ This court recently resolved the previously disputed question of the appropriate standard of review for Fourth Amendment determinations of probable cause. In reviewing such determinations, we will not disturb the district court's denial of a motion to suppress unless the decision is clearly erroneous. *United States v. Spears*, 965 F.2d 262, 269 (7th Cir.1992).

■ Police officers have probable cause to make an arrest where "the facts and circumstances within their knowledge and of which they [have] reasonably trustworthy information [are] sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 224, 13 L.Ed.2d 142 (1964). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527

(1983). The determination of whether probable cause exists in a given situation involves a common sense view of the everyday realities of life. *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949); *Hughes v. Meyer*, 880 F.2d 967, 969 (7th Cir.1989), *cert. denied sub nom., Hughes v. Buss*, 495 U.S. 931, 110 S.Ct. 2172, 109 L.Ed.2d 501 (1990).

■ This case presents a single question for review: Did the two arresting officers have probable cause to believe that the man in Pielli's store, later identified as Sam Levy, was engaging in or was about to engage in illegal activity? The United States argues that the sum total of the following facts, known to the officers at the time of the arrest, amounts to probable cause that Levy was soliciting in violation of the Evergreen Park municipal code: (1) Kincade solicited a donation from Pielli over the telephone and stated that he would send a runner to collect the donation; (2) Levy's sole purpose for being at the store was to collect the agreed upon twenty-five dollar donation; and (3) Kincade's phone call in combination with Levy's physical presence in the store amounts to a single act of solicitation. We disagree.

First, the Village ordinances prohibit only face-to-face solicitation. Section 26–35 prohibits soliciting on the streets, sidewalks and public ways of the Village, and section 26–20 prohibits soliciting on any private premises in the Village. Evergreen Park, Ill., Code §§ 26–20, 26–35. The district court correctly concluded that section 26–35 did not apply to telephone solicitation, and we think it equally clear that 26–20 does not encompass telephone solicitation. Thus, when Kincade called Pielli to ask for a donation, he was no doubt soliciting, but this activity did not violate either ordinance.

Second, the arresting officers knew that Kincade, not Levy, made the telephone call and solicited the donation. In arguing the government's motion to reconsider, the prosecutor conceded: "[I] do not maintain that Mr. Levy was the one who got on the phone and did the solicitation. None-the-less [sic], Mr. Levy came there as a result

of the solicitation." Tr. at 9–10 (Dec. 20, 1991). The government's attempt to justify the police officers' arrest of Levy on the basis of Kincade's phone call has aspects of killing the messenger because the message is unpalatable. The government urges us to impute the sins of the master to the servant, but what Kincade did here was not illegal. Thus, Kincade's phone call can hardly be used to impute guilt to Levy.

 Finally, the arresting officers knew that Levy himself at no time, either on the phone or while at the store, engaged in solicitation. Levy's activity in picking up the donation did not resemble solicitation. The Evergreen Park municipal code defines solicitation, in part, as "[s]eeking to obtain gifts or contributions of money, clothing, or any other valuable thing for the support or benefit of any religious, charitable or nonprofit association, organization, corporation or project." Evergreen Park, Ill., Code § 26–50. More generally, the dictionary defines "solicit" as seeking "by entreaty, earnest or respectful request, [or] formal application." Random House Dictionary 1816 (2d ed. 1987). Clearly, under either the legal definition or the common meaning of the word, Levy's presence in the store simply did not amount to solicitation nor could a reasonable person view it as such. Although probable cause does not require certainty, it does require some probability of criminal activity. *Gates*, 462 U.S. at 244 n. 13, 103 S.Ct. at 2335 n. 13. Based on these facts, we find no probability that Levy engaged in or was about to engage in criminal activity. Therefore, the police did not have probable cause to arrest Levy, and the district court erred in not suppressing the evidence as the fruit of an illegal search.

### III.

For the foregoing reasons, the district court's denial of the motion to suppress

and Levy's conviction and sentence are RE-VERSED.[1]

---

1. Because we reverse Levy's conviction, we do not reach the question whether the prior guilty pleas used to enhance his sentence under 18 U.S.C. § 924(e) should have been precluded on the ground that they were involuntarily and unintelligently entered. .