In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1081

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RALPH G. MOUNTS,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 91 CR 1010--John F. Grady, Judge.

Argued NOVEMBER 14, 2000--Decided April 30,
2001

Before CUDAHY, COFFEY, and ROVNER, Circuit
Judges.

COFFEY, Circuit Judge. In 1991, Mounts
was stopped twice for alleged traffic
violations within an hour by Arkansas
state troopers while en route to Chicago.
After arresting Mounts during the second
stop, the troopers conducted an inventory
search of Mounts' car and discovered 60
kilograms of cocaine in a suitcase in the
trunk. As a result, Mounts faced state
charges in Arkansas as well as federal
charges in Chicago and moved to suppress
the cocaine discovered in his suitcase in
both proceedings./1 The district court
denied the suppression motion in Mounts'
federal case, and in 1993 Mounts was
convicted of conspiracy to possess and
distribute cocaine, in violation of 21
U.S.C. sec.sec. 846, 841(a)(1), and three
counts of interstate travel with intent
to further a business enterprise
involving narcotics, in violation of 18
U.S.C. sec. 1952(a)(3).

In his first federal direct appeal,
Mounts' counsel argued that the first
stop was illegal and that it tainted the
second, but did not raise the question as

to whether the second stop was independently invalid. This court affirmed Mounts' convictions in 1994. United States v. Mounts, 35 F.3d 1208 (7th Cir. 1994) (judgment vacated by United States v. Mounts, 2000 WL 15090 (N.D. Ill. Jan. 05, 2000)).

However, shortly after this court affirmed Mounts' conviction, an en banc Arkansas state appellate court held that the officers did not have probable cause to arrest Mounts and, therefore, suppressed the 60 kilograms of cocaine found in the trunk of Mounts' rental car. Mounts v. Arkansas, 888 S.W.2d 321 (Ark. Ct. App. 1994) (en banc). Relying heavily on the Arkansas opinion, Mounts filed a section 2255 motion challenging his federal conviction and arguing that his appellate counsel was constitutionally ineffective for failing to file a proper appeal challenging the denial of his federal motion to suppress the cocaine. Specifically, Mounts argued that his counsel should have challenged the constitutionality of the second traffic stop independent of the first. The district court agreed and awarded Mounts a second direct appeal concerning the validity of his arrest after the second traffic stop.

The facts of this case are not in dispute and are as follows. While patrolling a known drug trafficking route near Little Rock, Arkansas, on August 7, 1991, Arkansas State Trooper Ronald Ball noticed that the Georgia license plate on Mounts' rental car displayed a sticker indicating the year, but not the month, of expiration. Mistakenly believing Georgia law required that both the month and year be displayed, Ball requested a computer check of the plate and stopped Mounts after learning that Georgia authorities had no registration information on file. After being stopped, Mounts produced a one-way rental agreement and a facially valid Texas driver's license that "checked out" when Ball ran it through the computer. Ball issued Mounts a warning citation for failing to display a monthly sticker and received Mounts' permission to search the trunk of the car. Another trooper, Mark Batson, began removing items from Mounts' trunk one by one, but Mounts requested that the search be stopped after Officer Batson removed an unusually heavy

suitcase from the trunk. As the trooper returned the suitcase to the trunk, he remarked that the suitcase "sure is heavy" and asked Mounts what it contained. Mounts replied that the suitcase contained books,/2 and asked the troopers why he had been stopped and whether he had done anything unusual or suspicious.

Despite their growing belief that Mounts was in possession of drugs, the troopers allowed Mounts to continue on his way. However, the officers continued to follow Mounts and conduct further criminal history checks. The additional background checks revealed that Mounts had his Illinois driver's license revoked for operating a motor vehicle while intoxicated and, according to the information relayed to the troopers, his revocation status was "still in effect." After the troopers confirmed that Texas law prohibited the licensure of anyone whose out-of-state license was in a suspension or revocation status, Mounts was stopped a second time approximately 40 minutes after the initial encounter. This time the troopers arrested Mounts for driving on a revoked license, impounded his car, and discovered the cocaine.

Mounts moved to suppress the cocaine, and the district court conducted a hearing and heard testimony from Officer Ball concerning the traffic stop and received in evidence the transcripts of Mounts' Arkansas suppression hearing. The district court denied Mounts' motion, ruling that the first stop was justified by the lack of registration information available on Mounts' license plates and that the arrest after the second stop was proper because the troopers had probable cause to believe that Mounts' license was invalid based on the information given to them concerning the status of Mounts' Illinois revocation and Texas law. Mounts went to trial and was convicted before a jury on all charges, and was sentenced to 188 months' imprisonment and five years' supervised release. As stated before, Mounts' section 2255 motion was granted and he was awarded a new direct appeal.

Although Mounts argues primarily that the troopers lacked probable cause to arrest him after the second traffic stop for the traffic offense listed on the

ticket issued--driving on a revoked license--his arrest was proper if the facts available to the troopers at that time were objectively sufficient to warrant a prudent person in believing that Mounts was in the process of committing some offense. Whren v. United States, 517 U.S. 806, 813 (1996); United States v. Moore, 215 F.3d 681, 686 (7th Cir. 2000). We review the probable cause determination involved in the district court's denial of Mounts' motion to suppress de novo, mindful that the probable cause standard permits reasonable mistakes by arresting authorities based on the information then and there available. Moore, 215 F.3d at 684, 686. The rule of probable cause is a "practical, nontechnical conception" that affords the best compromise between the interests of individual liberty and effective law enforcement. Illinois v. Gates, 462 U.S. 213, 231 (1983). As we stated in United States v. Sawyer, 224 F.3d 675, 678-79 (7th Cir. 2000),

[a] law enforcement officer has probable cause to make an arrest when the facts and circumstances within the officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a prudent person in believing the suspect has committed or is committing an offense. Gilbert, 45 F.3d at 1166; United States v. Levy, 990 F.2d 971, 973 (7th Cir. 1993) (citing Beck v. Ohio, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed.2d 142 (1964)). Probable cause, however, does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime. United States v. Burrell, 963 F.2d 976, 986 (7th Cir. 1992). So long as the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of criminal activity on thesuspect's part, probable cause exists. Levy, 990 F.2d at 973 (citing Illinois v. Gates, 462 U.S. 213, 244, 103 S. Ct. 2317, 76 L. Ed.2d 527 (1983)).

With regard to Mounts' arrest for driving on a revoked license, we are convinced that the officers had probable cause to believe that Mounts was in violation of Arkansas traffic laws based on the information then and there available. At the time of Mounts' arrest,

Arkansas law required all drivers to possess a valid license:

No person, except those expressly exempted, shall drive any motor vehicle upon a highway in this state unless the person has a valid license . . . under the provisions of this chapter.

Ark. Code Ann. sec. 27-16-602(a) (1991) (emphasis added).

The following persons are exempt from licensing under this chapter:

. . .

(3) A nonresident . . . who has in his immediate possession a valid operator's license issued to him in his home state . . . .

Ark. Code Ann. sec. 27-16-603 (1991). Furthermore, Texas law prohibited the licensure of anyone whose out-of-statelicense was currently under revocation:

The Department [of Public Safety] shall not issue any license . . . to:
. . .

(3) any person whose driver's license issued by this State or another state or country has been suspended, revoked, or canceled, during the suspension, revocation, or cancellation.

Tex. Rev. Civ. Stat. art. 6687(b) sec. 4(3) (1991) (emphasis added).

The officers were informed by the police dispatcher that Mounts' Illinois driver's license had been revoked for driving while intoxicated and that the revocation was "still in effect." Whether or not the officers were given faulty (inaccurate) information concerning the present status of Mounts' Illinois driver's license is immaterial to the case because police officers are entitled to rely on the reasonable information relayed to them from a police dispatcher. See, e.g., United States v. Hensley, 469 U.S. 221, 231 (1985).

Given this information in the record, we are convinced that the officers had probable cause to arrest Mounts for violating Arkansas traffic laws. They

knew that Mounts had a revoked Illinois driver's license and the troopers were informed that the revocation was still in effect. They also knew that an individual operating a motor vehicle with a driver's license in a revocation status (still in effect) could not legally obtain a driver's license in Texas. Thus, the officers, acting under the totality of the circumstances, had a reasonable suspicion that criminal activity was occurring; namely, that Mounts was operating a motor vehicle on a highway without having a valid driver's license, in violation of Arkansas law. Levy, 990 F.2d at 973; see also Illinois v. Gates, 462 U.S. at 244.

   The decision of the district court is AFFIRMED./3


/1 Mounts faced both Arkansas state drug charges and federal drug charges. Although Mounts faced state drug charges in Arkansas, federal authorities believed Mounts was participating in a drug conspiracy that funneled Columbian cocaine through Houston, Texas, for distribution and resale in Chicago, Illinois. Thus, Mounts was indicted and tried on the federal charges in Chicago.

/2 Mounts told the officers that he was a full-time student in Houston and was driving to Chicago to visit friends but that he planned to make the return trip via plane. However, the car rental agreement listed Mounts as a full-time employee at a store in Chicago named Moe's.

/3 Given the fact that we are of the opinion that the troopers had probable cause to arrest Mounts for violating Arkansas traffic laws, we need not address the other arguments raised on appeal.