# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 02-1116

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Clarence Johnson, also known as | * |
| D-dog, | * |
| | * |
| Appellant. | * |

_____

No. 02-1145

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Frederick L. Roache, | * |
| | * |
| Appellant. | * |

Appeals from the United States
District Court for the
Southern District of Iowa.
[UNPUBLISHED]

_____

Submitted:  June 14, 2002

Filed:  July 29, 2002

_____

Before WOLLMAN, RICHARD S. ARNOLD, and LOKEN, Circuit Judges.
_____

PER CURIAM.

Frederick L. Roache and Clarence Johnson were charged with conspiracy to distribute cocaine base and related offenses. Roache pleaded guilty to conspiracy to distribute drugs and related offenses and now appeals the sentence imposed by the district court.[1] Johnson, who was found guilty by a jury of conspiracy to distribute and possess with intent to distribute cocaine base and possession with intent to distribute cocaine base, appeals from his conviction, contending that the district court erred in denying his motion to suppress evidence. We affirm.

## I.

On March 8, 2001, a confidential informant made a controlled purchase of cocaine from Roache, who lived in the same apartment complex in Iowa City, Iowa, as both the informant and Johnson's girlfriend, Amy Vest. The informant went to Roache's apartment and then drove with him to another location in order to obtain the cocaine. On March 14, 2001, the confidential informant contacted Roache and told him she wanted to buy cocaine base. After the informant had returned to her apartment, undercover policemen observed Roache go to Vest's apartment, which was used by Johnson. Roache entered Vest's apartment, returned briefly to his apartment, and then delivered the cocaine base to the informant. The policemen then observed Johnson emerge from Vest's apartment with a woman and drive to the Lakeside Apartments in Iowa City.

---

[1]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

Based on the drugs purchased by the confidential informant and the activity observed by the policemen, the Iowa City police officers obtained search warrants for Vest's and Roache's apartments. The search of Vest's apartment uncovered photos of Johnson and a letter bearing his name, as well as three bags of marijuana. A search of Roache's apartment uncovered pipes, rolling papers, a metal scale, and other drug paraphernalia. Officers also encountered Roache's wife, Patricia Roache, who volunteered that Roache had accompanied Johnson to Chicago in order to purchase drugs. Mrs. Roache made several phone calls to her husband on her cellular phone during the course of his trip, which were monitored by the officers in an attempt to determine Roache's location.

When the vehicle driven by Roache reentered Iowa City, officers followed it to the Lakeside Apartments, where Johnson got out. One officer was already stationed at the apartment building and another followed Johnson after he exited Roache's vehicle. When Johnson reached the door to the apartment, one of the officers greeted him. Johnson tried to run from the building, but was restrained by the officers. A plastic bag containing 154 rocks of cocaine base was recovered from the floor where Johnson had been lying after being restrained.

Roache pleaded guilty to conspiracy to distribute and possess with intent to distribute cocaine base, distribution of cocaine, and distribution of cocaine base. He was sentenced to 77 months' imprisonment after the district court found that he was responsible for the drugs he distributed to the confidential informant and for the drugs that were found on Johnson after their trip to Chicago. On appeal, Roache argues that he should not be held accountable for the drugs found on Johnson because he was unaware that Johnson had purchased the drugs until they were returning to Iowa City.

At trial, Johnson moved to suppress the plastic bag containing the rocks of cocaine base, arguing that the police did not have probable cause to stop and arrest him. The district court denied this motion, and following the jury's verdict sentenced

Johnson to 262 months' imprisonment on each of the two counts on which he was convicted, with the sentences to run concurrently.

## II.

Roache contends that the district court erred in determining the amount of drugs attributable to him at sentencing because he should not be held responsible for the amount of drugs purchased by Johnson during their trip to Chicago. We do not agree. "We review the district court's factual determinations leading to the application of a sentence enhancement for clear error and its legal conclusions de novo." United States v. Cave, ___ F.3d ___, 2002 WL 1307106, *2 (8th Cir. June 10, 2002). The amount of drugs attributable to the defendant is a factual determination for the sentencing court that is reviewed for clear error. United States v. Atkins, 250 F.3d 1203, 1211 (8th Cir. 2001).

The determination of drug quantity attributable to a defendant convicted of conspiracy is determined as follows:

> A defendant convicted of conspiracy is properly held accountable for all reasonably foreseeable acts and omissions of any co-conspirator taken in furtherance of the conspiracy. Thus, in a drug conspiracy, the district court may consider amounts from drug transactions in which the defendant was not directly involved, provided that those other dealings were part of the same course of conduct or scheme. Before a quantity of drugs may be attributed to a particular defendant, the sentencing court is required to find by a preponderance of the evidence that the transaction or activity involving those drugs was in furtherance of the conspiracy and either known to that defendant or reasonably foreseeable to him.

Id. at 1211-1212 (quoting United States v. Brown, 148 F.3d 1003, 1008 (8th Cir. 1998)).  The district court determined that Roache knew or had reason to suspect that Johnson would be purchasing drugs in Chicago.  The district court also found that because Roache's criminal background made him well acquainted with the drug business, he should have known that his providing transportation to Johnson was a criminal act.  These findings are not clearly erroneous, and thus we affirm the sentence.

## III.

Johnson contends that the district court erred in denying his motion to suppress the evidence found in the plastic bag lying next to him after his arrest.  "While we review the district court's findings of fact for clear error, we review de novo the district court's ultimate finding of reasonable suspicion."  United States v. Dodson, 109 F.3d 486, 488 (8th Cir. 1997) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).  There is no violation of the Fourth Amendment if police officers have reasonable suspicion that criminal activity is afoot.  Terry v. Ohio, 392 U.S. 1, 30-31 (1968).  To determine whether an officer had reasonable suspicion to stop a suspect, we look at the "totality of the circumstances, in light of the officer's experience."  Dodson, 109 F.3d at 488.  The Supreme Court defines "reasonable suspicion" as "'a particularized and objective basis' for suspecting the person stopped of criminal activity."  Ornelas, 517 U.S. at 696 (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)).

The officers arresting Johnson knew that the previous day, Roache went to Johnson's girlfriend's apartment shortly after agreeing to provide drugs to a confidential informant.  Roache then provided cocaine base to the informant shortly after leaving Johnson's girlfriend's apartment, with only a brief stop at his own apartment intervening.  Johnson was seen exiting his girlfriend's apartment minutes

after this transaction. The police knew that Roache and Johnson had gone to Chicago to buy drugs. When one of the officers greeted Johnson in the hallway of an apartment building upon his return from Chicago, he attempted to run. See United States v. Willis, 967 F.2d 1220, 1223 (8th Cir. 1992) (citing Sibron v. New York, 392 U.S. 40, 66 (1968) for the proposition that "deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea"); see also Illinois v. Wardlow, 528 U.S. 119, 124-25 (2000). These facts provided a substantial basis for the officers' belief that Johnson was involved in the transportation of drugs. Accordingly, the district court did not err in denying the motion to suppress.

The judgments are affirmed.[2]

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[2]Johnson's pending pro se motions are denied.

-6-