# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-1012

———————

United States of America,

          Appellee,

v.

Dora Elena San-Miguel,

          Appellant.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   Western District of Missouri.
\*
\*
\*
\*

———————

Submitted: September 20, 2010
Filed: February 11, 2011

———————

Before GRUENDER, BRIGHT, and SHEPHERD, Circuit Judges.

———————

GRUENDER, Circuit Judge.

Dora Elena San-Miguel was sentenced by the district court[1] to 168 months' imprisonment after pleading guilty, without a plea agreement, to (1) conspiracy to distribute 500 grams or more of methamphetamine, five kilograms or more of cocaine, and 50 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(C); (2) possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); and (3) possession of a firearm by an illegal alien,

---

[1] The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

in violation of 18 U.S.C. §§ 922(g)(5), 924(a)(2). San-Miguel challenges her sentence on procedural and substantive grounds. For the following reasons, we affirm.

## I. BACKGROUND

San-Miguel's prosecution stems from a year-long investigation by law enforcement authorities into a drug-distribution conspiracy involving eleven co-conspirators engaged in methamphetamine, cocaine, and marijuana smuggling and distribution in Kansas City, Missouri. Investigators used wiretaps, which intercepted conversations between San-Miguel and her co-conspirators regarding drug transactions, and confidential informants, who purchased methamphetamine from San-Miguel. Officers from the Kansas City Police Department and agents from Immigration and Customs Enforcement arrested San-Miguel for being an illegal alien found in the United States. San-Miguel told the agents that she kept a locked safe in her basement, provided them with the combination, and consented to a search of her home. Agents recovered an unloaded RG Industries RG40 .38 caliber revolver, a box of .38 caliber ammunition, and 297.5 grams of cocaine from the safe. They also seized 978.9 grams of marijuana and small amounts of methamphetamine from three other locations in San-Miguel's home.

With respect to her advisory sentencing guidelines calculation, the quantity of drugs attributable to San-Miguel placed her at a base offense level of 34. She received a two-level enhancement for possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1) and a two-level enhancement pursuant to § 3B1.1(c) for acting as an organizer or leader. After a three-level reduction for acceptance of responsibility, San-Miguel's total offense level was 35 and her criminal history was Category I, resulting in an advisory guidelines range of 168 to 210 months. The district court sentenced San-Miguel to 168 months' imprisonment.

## II.    DISCUSSION

"In reviewing a defendant's sentence, we first ensure that the district court did not commit significant procedural error, such as an improper calculation of the advisory sentencing guidelines range; then, absent significant procedural error, we review the sentence for substantive reasonableness." *United States v. Jenkins*, 578 F.3d 745, 748 (8th Cir. 2009), *cert. denied*, 559 U.S. ---, 130 S.Ct. 1550 (2010). San-Miguel argues that the district court procedurally erred by improperly calculating her advisory guidelines range when it applied the two-level dangerous weapon enhancement, *see* § 2D1.1(b)(1), and by failing to adequately explain the imposed sentence, *see Gall v. United States*, 552 U.S. 38, 51 (2007) (listing examples of procedural error, including "failing to calculate (or improperly calculating) the Guidelines range . . . or failing to adequately explain the chosen sentence"). "In reviewing a sentence for procedural error, we review the district court's factual findings for clear error and its application of the guidelines *de novo*." *United States v. Barker*, 556 F.3d 682, 689 (8th Cir. 2009).

For the two-level dangerous weapon enhancement under § 2D1.1(b)(1) to apply, the Government must prove that "(1) the gun was possessed and (2) it was not clearly improbable that the weapon was connected to the drug offense." *United States v. Anderson*, 618 F.3d 873, 880 (8th Cir. 2010), *petition for cert. filed*, --- U.S.L.W. ---, (U.S. Jan. 19, 2011) (No. 10-8618); *see also* U.S.S.G. § 2D1.1(b)(1) cmt. n.3. San-Miguel challenges only the district court's determination that it is not clearly improbable that the weapon was connected to the drug offense. In particular, San-Miguel relies on the fact that the revolver was unloaded and found in a locked safe. We have held that "[e]vidence that the weapon was found in the same location as drugs or drug paraphernalia usually suffices" to show the necessary connection. *Anderson*, 618 F.3d at 881 (quoting *United States v. Fladten*, 230 F.3d 1083, 1086 (8th Cir. 2000) (per curiam)); *see also United States v. Brewer*, 624 F.3d 900, 907 (8th Cir. 2010) (affirming the application of a weapons enhancement where the

"loaded handgun . . . was recovered from a case in [the] trunk [of the defendant's girlfriend's vehicle] and was equipped with a trigger lock"); *United States v. Minnis,* 489 F.3d 325, 332 (8th Cir. 2007) (affirming the application of a weapons enhancement where police found a firearm in the same room as "cocaine, latex gloves, and wads of money"); *Fladten*, 230 F.3d at 1086 (affirming the application of a weapons enhancement where "the weapon was found in the house along with drugs and drug paraphernalia"). Here, agents found the revolver inside of San-Miguel's safe along with a box of ammunition matching the caliber of the revolver and 297.5 grams of cocaine. The fact that the revolver was unloaded when found by the agents does not weigh heavily against the district court's conclusion. *See United States v. Canania*, 532 F.3d 764, 771 (8th Cir. 2008) (affirming a district court's imposition of the dangerous weapon enhancement despite the fact that the firearm was found unloaded and that the jury acquitted the defendants on firearms charges). While San-Miguel argues that the enhancement should not apply because law enforcement agents did not observe her exhibit a firearm or "employ the use of any firearms or dangerous weapons during the drug offenses," we have held that "[t]he government need not show that the defendant used or even touched a weapon." *United States v. Peroceski*, 520 F.3d 886, 889 (8th Cir. 2008) (quoting *Fladten*, 230 F.3d at 1086). Because the evidence shows that San-Miguel possessed the weapon and agents found the weapon in the same location as a distributable amount of cocaine, the district court did not clearly err in finding that the Government met its burden of showing that it is not "clearly improbable" that the revolver was connected to the drug offense.

Next, San-Miguel argues that the district court procedurally erred by failing to explain adequately the sentence it imposed because the court did not "address each individual [18 U.S.C. §] 3553 factor at sentencing" and "never referred to the parsimony principle of section 3553." We review this argument for plain error because it was not raised to the district court at the time of sentencing. *See United States v. Burrell*, 622 F.3d 961, 965 (8th Cir. 2010). "[B]efore an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that

affects substantial rights [and] (4) . . . seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Donnell*, 596 F.3d 913, 920 (8th Cir. 2010) (quoting *United States v. Pirani*, 406 F.3d 543, 550 (8th Cir. 2005)), *cert. denied* 562 U.S. ---, 79 U.S.L.W. 3419 (2011).

We have held repeatedly that a "'mechanical recitation' of the [§ 3553(a)] factors is unnecessary, 'particularly when a judge elects simply to apply the advisory guideline range to a particular case.'" *United States v. Williams*, 599 F.3d 831, 833 (8th Cir.) (quoting *United States v. Zastrow*, 534 F.3d 854, 855 (8th Cir. 2008)), *cert. denied*, 559 U.S. ---, 130 S.Ct. 2134 (2010). A lengthy explanation is not necessarily required in that situation because "[c]ircumstances may well make clear that the judge rests [his] decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence . . . in the typical case, and that the judge has found that the case before [him] is typical." *United States v. Todd*, 521 F.3d 891, 897 (8th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 357 (2007)). Moreover, the district court did engage in a sufficiently detailed explanation of the reasons for its sentence in this case. The record here shows that the district court addressed many of the § 3553(a) factors, including the nature of the offense, San-Miguel's role in it, the need for the sentence imposed to afford adequate deterrence, San-Miguel's ineligibility for community confinement, and the need to avoid unwarranted sentence disparities among similarly-situated defendants. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(3), (a)(6). Moreover, this is not "the rare case in which a within-the-range sentence can be found to transgress the parsimony principle." *United States v. Bolden*, 596 F.3d 976, 985 (8th Cir.) (quoting *United States v. Turbides-Leonardo*, 468 F.3d 34, 41 (1st Cir. 2006)), *cert. denied*, 562 U.S. ---, 131 S.Ct. 277 (2010). Therefore, we do not agree with San-Miguel that the district court erred, plainly or otherwise, by failing to explain adequately its basis for the sentence imposed in this case. Accordingly, we conclude that San-Miguel has failed to show the district court procedurally erred.

San-Miguel also argues that her sentence is substantively unreasonable because the district court improperly focused on what other courts might do in similar circumstances and because the district court did not agree with San-Miguel that it should impose the mandatory minimum sentence of 10 years' imprisonment. A sentence that falls within a properly-calculated advisory guidelines range—as does San-Miguel's sentence—is presumptively reasonable on appeal. *See United States v. Saddler*, 538 F.3d 879, 890 (8th Cir. 2008). We will not reverse a sentence as substantively unreasonable absent a showing of abuse of discretion by the district court. *Gall*, 552 U.S. at 51; *United States v. Miner*, 544 F.3d 930, 932 (8th Cir. 2008). "A district court abuses its discretion when it fails to consider a relevant factor, gives significant weight to an irrelevant or improper factor, or considers only appropriate factors but nevertheless commits a clear error of judgment by arriving at a sentence that lies outside the limited range of choice dictated by the facts of the case." *United States v. Jones*, 509 F.3d 911, 913 (8th Cir. 2007) (citing *United States v. Haack*, 403 F.3d 997, 1004 (8th Cir. 2005)). "As the case law in the courts of appeals since *Gall* demonstrates, it will be the unusual case when we reverse a district court sentence . . . as substantively unreasonable." *United States v. Feemster*, 572 F.3d 455, 464 (8th Cir. 2009) (en banc) (quoting *United States v. Gardellini*, 545 F.3d 1089, 1090 (D.C. Cir. 2008)).

San-Miguel argues that the district court placed too much emphasis on the sentence that other courts might impose under similar circumstances, as evidenced by its statement that "while we're not bound by the guidelines, I would assume that others are going to look at the guidelines in sentencing in similar cases and that a guideline[s] sentence would very likely be used here generally." Consequently, according to San-Miguel, the district court wrongly rejected her request for the mandatory minimum sentence of 10 years' imprisonment. How other courts might sentence a similarly-situated defendant is a proper factor for the district court to consider. *See* § 3553(a)(6) (requiring the sentencing court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who

have been found guilty of similar conduct"). Therefore, San-Miguel's claim is that the district court considered appropriate factors but committed a clear error of judgment by allegedly placing too much weight on § 3553(a)(6). This argument lacks merit. "The district court has wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence." *United States v. Bridges*, 569 F.3d 374, 379 (8th Cir. 2009). "The court's specific reference to [certain] factors does not mean that it failed to consider the others." *Williams*, 599 F.3d at 833.

The district court did note various factors which it considered as "reasons to suppose that a sentence below 168 months might be appropriate," such as San-Miguel's age, her anticipated deportation upon the completion of her sentence, her ineligibility for community confinement, as well as the fact that "she was not relying significantly on firearms" since the firearm was located in a locked safe. After stating that "the defendant was a central figure here in this activity that brought so much trouble on everybody else, including herself," the district court rejected San-Miguel's request for a mandatory minimum sentence and sentenced her to the bottom of the advisory guidelines range. While it did not specifically mention factors that weighed against lenient treatment, the district court had before it extensive information regarding the nature and circumstances of the offense, including the large quantity of cocaine and marijuana seized, the presence of a firearm, the sizable number of co-conspirators, and San-Miguel's involving her daughter in the conspiracy. *See United States v. Battiest*, 553 F.3d 1132, 1136 (8th Cir. 2009) ("[T]he district court had at its disposal the PSR [Presentence Investigation Report], the objections to the PSR, the sentencing memoranda[,] . . . and the parties' recommendations for sentences that they considered sufficient but not greater than necessary. The district court also heard oral argument on these issues from the parties at sentencing. Taken together then, the district court had significant exposure to the sentencing issues [the defendant] claims it failed to adequately consider."). Although the district court identified factors that could support a below-the-guidelines sentence, we cannot say that this is the unusual

case in which a district court committed a clear error of judgment by arriving at a sentence that lies outside the limited range of choice dictated by the facts of the case. Thus, we conclude that San-Miguel's within-the-guidelines sentence is not substantively unreasonable.

## III.  CONCLUSION

For the foregoing reasons, we affirm San-Miguel's sentence.

BRIGHT, Circuit Judge, dissenting.

I believe the sentencing guidelines, which recommended a 168-210 month sentence, and the ten-year statutory minimum resulted in the imposition of an unnecessarily lengthy sentence of fourteen years (168 months).  Accordingly, I dissent.

The district court discussed all the reasons for mitigation but chose not to apply any one of them.  The majority acknowledges that the district court identified several factors meriting a downward variance and did not specifically mention factors that weighed against lenient treatment.  But the majority reasons that because the district court possessed extensive information about San-Miguel's offense, the court did not abuse its discretion in imposing a fourteen-year sentence.

I disagree.  The court found that San-Miguel was 45 years old at sentencing and that she will be deported following her incarceration.  The court acknowledged that these findings lessened the danger of recidivism and supported leniency.  The court also noted that because San-Miguel faces deportation, she will likely receive harsher treatment from the Bureau of Prisons.  Additionally, the court adopted the probation office's presentence investigation report, which explains that San-Miguel had zero

criminal history points and fully accepted responsibility for her criminal behavior. Nevertheless, the district court imposed a guideline sentence.

Absent the guidelines and the statutory minimum under 21 U.S.C. § 841, application solely of 18 U.S.C. § 3553(a) would have guided the district court to a lesser sentence, which would have achieved the goals of sentencing.

Additionally, as I have previously explained, long sentences make little sense for those who face deportation. *See United States v. Loaiza-Sanchez*, 622 F.3d 939, 942 (8th Cir. 2010) (Bright, J., dissenting); *United States v. Chavez*, 230 F.3d 1089, 1092 (8th Cir. 2000) (Bright, J., concurring). It is time for the Sentencing Commission and sentencing courts to recognize this fact of life.

_____